*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0196p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                              *Plaintiff-Appellee,*

          *v.*                                              No. 11-6105

TRAVIS R. HOGG,
                              *Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:10-cr-99-1—William J. Haynes, Jr., District Judge.

Argued: July 25, 2012

Decided and Filed:  July 26, 2013

Before:  COLE and COOK, Circuit Judges; ROSEN, Chief District Judge.*

_____

### COUNSEL

**ARGUED:** Michael C. Holley, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant.  Brent A. Hannafan, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.  **ON BRIEF:** Michael C. Holley, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Brent A. Hannafan, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.

---

*The Honorable Gerald E. Rosen, Chief Judge of the United States District Court for the Eastern District of Michigan, sitting by designation.

———————————

## OPINION

———————————

ROSEN, Chief District Judge.

## I. **INTRODUCTION**

Defendant/Appellant Travis R. Hogg was charged in a two-count indictment with possession with intent to distribute fifty grams or more of crack cocaine and possession with intent to distribute an unspecified quantity of cocaine. On March 21, 2011, Defendant pled guilty to a lesser included variant of the first of these offenses, possession with intent to distribute five grams or more of crack cocaine, and he was sentenced to a 188-month term of imprisonment on September 13, 2011.

Defendant now appeals the district court's denial of two motions to withdraw his guilty plea. The first of these motions rested upon newly-discovered evidence concerning criminal charges brought against the lead detective in Defendant's case. In the second motion, Defendant argued that the district court violated Fed. R. Crim. P. 11(b)(1)(H)-(I) by incorrectly advising him of the statutory penalty range for the lesser included offense to which he pled guilty. Beyond these challenges to the district court's rulings, Defendant contends for the first time on appeal that the Government offered him an inducement to plead guilty that was not included in his written plea agreement.

While this case was pending on appeal, and after the parties had completed their briefing, the Supreme Court issued its ruling in *Dorsey v. United States*, __ U.S. __, 132 S. Ct. 2321, 2326 (2012), holding that defendants who are sentenced after the August 3, 2010 effective date of the Fair Sentencing Act of 2010 ("FSA"), Pub. L. No. 111-220, 124 Stat. 2372, are entitled to the benefit of the "new, more lenient" statutory penalties set forth in this enactment for crack cocaine offenses. *Dorsey* overrode the law of this Circuit as it stood at the time Defendant was sentenced, which held that the courts should apply the statutory penalty provisions in effect at the time a defendant committed his offense. *See United States v. Carradine*, 621 F.3d 575, 580 (6th Cir. 2010).

Understandably, then, the district court in this case failed to anticipate the ruling in *Dorsey,* and instead advised Defendant of the pre-FSA statutory penalty range for the lesser included offense to which he pled guilty.

This post-plea development calls to mind two maxims that arguably might guide us in deciding this appeal. First, the Government urges us to apply the principle of "no harm, no foul," contending that Defendant received precisely the 188-month sentence for which he bargained, and that this sentence is readily justified, even under the post-FSA sentencing regime, by the over fifty grams of crack cocaine for which Defendant admitted responsibility in his plea agreement. Next, we are tempted to caution Defendant to "be careful what you wish for," because in exchange for the 188-month plea deal he now wishes to spurn, he received (i) the opportunity to plead guilty to an offense involving significantly less crack cocaine than he admitted responsibility for in his plea agreement, (ii) the dismissal of the second count of the indictment, and (iii) apparent freedom from the prospect that the Government might pursue charges arising from a second incident occurring after his initial arrest.

As we discuss below, however, while these maxims carry an undeniable commonsense appeal, our precedents compel us to chart a different course under the unique facts and procedural posture of this case. Indeed, we find ourselves drawn toward yet a third well-known expression — namely, that "no good deed goes unpunished" — because despite the district court's commendable effort to address the potential impact of the FSA at Defendant's plea hearing, neither the court nor counsel correctly anticipated the effect of this new enactment on the statutory penalty range for the offense to which Defendant agreed to plead guilty. In light of this error — or perhaps lack of clairvoyance — and the resulting Rule 11 violation in the advice given to Defendant at his plea hearing, we find that Defendant should have been permitted to withdraw his guilty plea, and we REVERSE and REMAND to the district court for further proceedings consistent with this ruling.

## II. **FACTUAL AND PROCEDURAL BACKGROUND**

**A.     Defendant's Arrest**

On September 2, 2009, officers of the Wilson County Sheriff's Department went to a residence at 2404a Phillips Road in Lebanon, Tennessee to execute an arrest warrant for domestic assault against Defendant Travis Hogg. After knocking on the front door, the officers arrested Defendant as he attempted to leave the residence through the back door. Defendant confessed to one of the officers, Detective John Edwards, that he had been smoking marijuana when the officers arrived at his home.

Following Defendant's arrest, Detective Edwards applied for a warrant to search the Phillips Road residence, citing Defendant's admission to marijuana use and the purported statements of two of Defendant's acquaintances that Defendant lived at this address and possessed or sold narcotics at this location.[1] Upon obtaining the requested search warrant, Detective Edwards and other officers searched the Phillips Road residence and found just over 55 grams of crack cocaine, approximately 167 grams of powder cocaine, and multiple weapons.

While on bond, Defendant was arrested on March 10, 2010 at his mother's house pursuant to an unrelated, outstanding arrest warrant, with Detective Edwards again among the officers present on this occasion. Defendant gave his consent to search the premises, and also showed Detective Edwards where he kept marijuana, cocaine, and digital scales at his mother's home.[2] The day after this arrest, Defendant gave a statement in which he admitted to selling drugs but denied that the cocaine found in the Phillips Road residence back in September of 2009 belonged to him.

---

[1]As discussed below, Defendant has since produced affidavits from these individuals denying that they made the statements attributed to them in Detective Edwards' search warrant affidavit.

[2]The Government has not brought any charges arising from the drugs found during Defendant's March 10, 2010 arrest. Defendant contends on appeal that the Government promised during plea bargaining to refrain from prosecuting him for his conduct on this occasion, but that this promise was erroneously omitted from the parties' plea agreement.

**B.       Defendant's Indictment and Guilty Plea**

On April 28, 2010, a federal grand jury returned a two-count indictment charging Defendant with possession with intent to distribute fifty grams or more of crack cocaine and possession with intent to distribute an unspecified amount of cocaine. On March 21, 2011, Defendant entered into a plea agreement under Fed. R. Crim. P. 11(c)(1)(C) that called for him to "enter a voluntary plea of guilty to a lesser included offense of the charge in Count One of the indictment" — namely, possession with intent to distribute five grams or more of crack cocaine.  (R. 21, Plea Agreement at ¶ 3, PageID 36.)[3]  The plea agreement recited the parties' agreement and understanding that the statutory penalty range for this lesser included offense was "not . . . less than five years nor more than forty years [of] imprisonment."  (*Id.* at ¶ 4.)  The parties further agreed to a recommended advisory sentencing range under the U.S. Sentencing Guidelines of 188 to 235 months of imprisonment, and the plea agreement called for the district court to impose a sentence of 188 months' imprisonment.  (*Id.* at ¶¶ 10(c), 11, PageID 42-43.) As the factual basis for his guilty plea, Defendant acknowledged in the agreement (i) that he "did unlawfully, knowingly, and intentionally possess with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of cocaine base, that is, crack cocaine," (ii) that the controlled substances seized from the Phillips Road residence in connection with his September 2, 2009 arrest included approximately 167 grams of powder cocaine and 55.2 grams of cocaine base, and (iii) that, for purposes of determining relevant conduct under the Sentencing Guidelines, "the total amount of cocaine base for which he is responsible is between at least 50 grams but less than 150 grams."  (*Id.* at ¶¶ 8(a),(f),(g), PageID 38-40.)

At Defendant's March 21, 2011 plea hearing, the district court and counsel addressed the possible impact of the FSA on the statutory penalty range for the offense to which Defendant was pleading guilty.  In particular, the district court noted the parties' statement in the plea agreement that Defendant faced a "five-year mandatory

---

[3]The Government agreed to dismiss the second count of the indictment upon Defendant's sentencing for this lesser included crack cocaine offense.

minimum sentence" and a "maximum possible penalty [of] 40 years," but the court further advised Defendant that depending "in large part about whether the Fair Sentencing Act passed in 2010 applies to your case," it was "possible that the statutory maximum penalty is life imprisonment and that there is a ten-year mandatory minimum sentence." (R. 33, Plea Hearing Tr. at 15-16, PageID 129-30; *see also id.* at 20-21, PageID 134-35.) Counsel for both the Government and Defendant stated their views that the 5-to-40-year statutory sentencing range stated in the plea agreement was accurate, but they agreed that it was prudent "out of [an] abundance of caution" to inform Defendant that he might instead be facing a statutory penalty range of ten years to life imprisonment. (*Id.* at 9-12, PageID 123-26.) At the conclusion of the plea hearing, the district court accepted both Defendant's guilty plea and the plea agreement.

## C.    Defendant's First Motion to Withdraw His Guilty Plea

Just a few days after the court accepted Defendant's guilty plea, Detective Edwards was arrested and charged by state authorities with property theft, and he was later charged in a federal criminal complaint with attempting to sell confidential investigative information to the targets of a federal drug investigation.[4] In light of these developments, Defendant filed an April 8, 2011 motion to withdraw his guilty plea, arguing that the "newly emerging evidence" of Detective Edwards' legal troubles would improve his prospects at trial by "undermin[ing] the credibility of the key witness against him." (R. 23, Defendant's 4/8/2011 Motion to Withdraw Plea at 1, PageID 49.) Defendant also submitted affidavits from two of the individuals cited in Detective Edwards' affidavit for the warrant to search the Phillips Road residence, denying that they had made the inculpatory statements attributed to them by Detective Edwards.

Following a June 20, 2011 hearing, the district court denied Defendant's motion. Specifically, in a July 12, 2011 memorandum and order, the district court observed that Defendant had not asserted his innocence as a ground for withdrawing his guilty plea,

---

[4]Detective Edwards subsequently pled guilty to a federal charge of obstructing an official proceeding, and was sentenced to a 220-month term of imprisonment by the U.S. District Court for the Middle District of Tennessee.

but instead had maintained that "because Edwards's credibility has been tarnished by the charges against him, the Government lacks a strong enough case to convict Defendant." (R. 40, 7/12/2011 Mem. Op. at 8, PageID 368.) Yet, in light of the facts admitted by Defendant in his plea agreement — including, most notably, his admission that "he did unlawfully, knowingly, and intentionally possess[] with intent to distribute 50 grams or more of crack cocaine" — the court found that Defendant's guilt of the charge to which he pled had been established beyond a reasonable doubt, regardless of any developments that might have called Detective Edwards' credibility into question. (*Id.*) As additional grounds for denying Defendant's motion, the district court pointed to (i) the "months of negotiations" that led to Defendant's plea agreement, (ii) the benefits gained by Defendant through this agreement, (iii) Defendant's extensive familiarity with the criminal justice system, and (iv) Defendant's knowledge prior to his plea that his acquaintances disputed the statements attributed to them in Detective Edwards' search warrant affidavit. (*Id.* at 9-11, PageID 369-71.)

## D.     Defendant's Second Motion to Withdraw His Guilty Plea

On August 22, 2011, Defendant filed a second motion to withdraw his guilty plea, contending that the district court had violated Fed. R. Crim. P. 11(b)(1)(H)-(I) by misinforming him as to the applicable statutory penalty range for the offense to which he had pled guilty. As noted in this motion, while the district court and counsel had considered at the March 21, 2011 plea hearing whether this penalty range might be affected by the FSA, "no one present considered the best-possible-case scenario" — namely, that the FSA would govern Defendant's sentence, resulting in a statutory penalty range of zero to twenty years for a drug offense involving at least five grams but less than 28 grams of crack cocaine. (R. 47, Defendant's 8/22/2011 Second Motion to Withdraw Plea at 4, PageID 399.) Defendant further observed that with this lower statutory maximum of twenty years, his offense level under the applicable career offender provision of the U.S. Sentencing Guidelines, U.S.S.G. § 4B1.1, would be decreased from 34 to 32, resulting in an advisory Sentencing Guideline range of 151 to 188 months rather than the 188-to-235-month range set forth in his plea agreement. (*See*

*id.*) If these effects of the FSA had been accurately disclosed to him, Defendant asserted that he would not have accepted the Government's offer of a 188-month sentence — an offer which, as Defendant noted, was at the top of the post-FSA Sentencing Guideline range and "only about four years short of the [post-FSA] statutory maximum of 240 months" — and he contended that the failure to make these disclosures violated Rule 11 and warranted the withdrawal of his guilty plea. (*Id.* at 4-5, 8-10, PageID 399-400, 403-05.)

In a September 8, 2011 memorandum and order, the district court denied Defendant's motion. In so ruling, the district court pointed to the decision in *Carradine*, 621 F.3d at 580, in which this Court held that the FSA lacked any statement of congressional intent that would overcome the usual presumption that a criminal defendant should be subject to the "penalties in place at the time the crime was committed." Although *Carradine* did not squarely address the applicability of the FSA to a defendant who committed his crime before the statute's enactment but is sentenced after its effective date, the district court noted that a number of district courts in this Circuit had read *Carradine* as foreclosing the availability of the FSA's more lenient penalties in this situation, and it concluded, consistent with this authority, that Defendant had been accurately advised as to the applicable statutory penalty range in his plea agreement and at the plea hearing. (*See* R. 52, 9/8/2011 Mem. Op. at 12-14, PageID 520-22.) Alternatively, even if the FSA were to govern Defendant's sentencing, the district court found that Defendant still would be subject to the same 5-to-40-year statutory penalty range disclosed in his plea agreement and at the plea hearing, in light of his admission in his plea agreement to a quantity of crack cocaine (55.2 grams) that exceeded the 28-gram threshold that continued to trigger a 5-to-40-year penalty range in the wake of the FSA's enactment. (*See id.* at 14-16, PageID 522-24.) Accordingly, the district court found no violation of Rule 11 in Defendant's plea agreement or at his plea hearing, and thus concluded that there were no grounds for allowing Defendant to withdraw his plea.

Following this ruling, the district court conducted a September 9, 2011 sentencing hearing. In the course of this hearing, Defendant reasserted his contention that the correct statutory penalty range for the offense to which he pled guilty was zero to twenty years of imprisonment, but the district court overruled this objection for the reasons given in its ruling on Defendant's second motion to withdraw his guilty plea. (*See* R. 60, Sentencing Hearing Tr. at 7-8, PageID 595-96.) Upon resolving this and other matters raised by the parties, the district court sentenced Defendant to the 188-month term of imprisonment called for in his Rule 11(c)(1)(C) plea agreement. This appeal followed, with Defendant challenging the district court's denial of his two motions to withdraw his guilty plea, and also arguing that his plea agreement erroneously omitted a promise of leniency made by the Government in the course of the parties' plea negotiations.

### III. ANALYSIS

**A.      The Standards Governing This Appeal**

In his second motion to withdraw his guilty plea, Defendant argued that his plea was not knowing, voluntary, and intelligent in light of the district court's purported failure to comply with the dictates of Rule 11(b)(1)(H)-(I) during the course of the plea hearing. Assuming that Defendant is able to establish this claimed violation — a point challenged by the Government — we review such a violation of Rule 11 for harmless error. *See* Fed. R. Crim. P. 11(h); *see also United States v. Martin*, 668 F.3d 787, 791 (6th Cir. 2012). Under the plain language of the Rule itself, a "variance from the requirements of this rule is harmless error if it does not affect substantial rights." Fed. R. Crim. P. 11(h). The Government bears the burden of establishing the harmlessness of a Rule 11 violation. *See United States v. Vonn*, 535 U.S. 55, 62-63, 122 S. Ct. 1043, 1048 (2002).[5]

---

[5]A different standard would govern our review of the district court's denial of Defendant's first motion to withdraw his guilty plea, as that motion did not rest on any Rule 11 violation, nor did Defendant challenge the voluntariness of his plea in that motion. We need not consider the merits of the district court's resolution of this motion, however, in light of our determination that Defendant should have been permitted to withdraw his guilty plea on the grounds identified in his second motion.

As we have recognized, however, a defendant surrenders the comparative benefit of harmless error review, and instead must satisfy the more demanding plain error standard, if he fails to timely object to a claimed Rule 11 violation. *See Martin*, 668 F.3d at 791. In that event, "the tables are turned on demonstrating the substantiality of any effect on a defendant's rights: the defendant who sat silent at trial has the burden to show that his 'substantial rights' were affected." *Vonn*, 535 U.S. at 62-63, 122 S. Ct. at 1048. More specifically, if a defendant "seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, [he] must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83, 124 S. Ct. 2333, 2340 (2004). The defendant then has the "further burden," under plain error review, to "persuade the court that the error seriously affected the fairness, integrity or public reputation of judicial proceedings." *Vonn*, 535 U.S. at 63, 122 S. Ct. at 1048 (internal quotation marks, alteration, and citations omitted).

At oral argument, the Government suggested that Defendant must meet the more stringent plain error standard because his counsel not only failed to object to any claimed Rule 11 error in the course of the plea hearing, but to the contrary agreed with the district court's determination that the offense to which Defendant was pleading guilty was subject to a 5-to-40-year statutory penalty range. (*See* R. 33, Plea Hearing Tr. at 9, PageID 123.)[6] Yet, the Government failed to argue in its brief on appeal that the plain error standard should apply, but instead asserted that Rule 11's harmless error provision governs our review of the district court's denial of Defendant's second motion to withdraw his guilty plea. (*See* Appellee's Br. at 47 (citing Fed. R. Crim. P. 11(h).) Arguably, then, the Government has forfeited the opportunity for plain error review of Defendant's claim of a Rule 11 violation at his plea hearing. *See United States v. Rodriguez*, 664 F.3d 1032, 1035 (6th Cir. 2011) (reviewing *de novo* a challenge to a

---

[6]As noted earlier, defense counsel was somewhat equivocal on this point, opining that Defendant was subject to a mandatory statutory minimum of "at least five years based on his plea," but agreeing with the district court's suggestion that Defendant should be advised in the alternative that the statutory penalty range for the offense to which he pled guilty might be ten years to life imprisonment. (*Id.* at 9-11, PageID 123-25.)

Sentencing Guideline determination "because the Government has not asked us to apply the plain-error standard in light of [the defendant's] failure to object below"); *United States v. Williams*, 641 F.3d 758, 763 (6th Cir. 2011) ("[W]e will not apply the plain-error standard unless requested to do so by one of the parties."). *See generally Hunter v. United States*, 160 F.3d 1109, 1113 (6th Cir. 1998) (confirming that "as with any other argument, the government can forfeit a waiver argument by failing to raise it in a timely fashion").

At any rate, the Government's acknowledgment of the harmless error standard in its appellate brief is understandable, because Defendant preserved his entitlement to this more favorable standard of review by expressly claiming a Rule 11 violation in the course of the district court proceedings. Although, as noted, he and his counsel did not identify this purported Rule 11 error at the first available opportunity, the plea hearing, Defendant's second motion to withdraw his guilty plea rested squarely on the contention that the district court violated Rule 11(b)(1)(H)-(I) by "misinform[ing] [him] as to the statutory penalty range for the offense to which he pled guilty." (R. 47, Defendant's 8/22/2011 Second Motion to Withdraw Plea at 1, PageID 396.) The district court, in turn, explicitly addressed Defendant's claim of a Rule 11 violation in its opinion denying this motion. (*See* R. 52, 9/8/2011 Mem. Op. at 10-11, 14-15, PageID 518-19, 522-23.)

This was sufficient to secure harmless error review of this claim. Under the express language of Fed. R. Crim. P. 52(b), plain error review is required if an issue was "not brought to the court's attention." Here, however, Defendant unequivocally advanced his Rule 11 challenge in the lower court proceedings and gave the district court an opportunity to rule on this matter. Likewise, our precedents do not demand strict contemporaneity in complaining of purported defects in plea proceedings, but instead hold that plain error review is avoided so long as a defendant raises a claim of Rule 11 error in the course of the district court proceedings and prior to sentencing. *See, e.g., United States v. Lalonde*, 509 F.3d 750, 759 (6th Cir. 2007) ("We review violations of Rule 11 for plain error if the defendant did not object before the district court."); *United States v. Murdock*, 398 F.3d 491, 496 (6th Cir. 2005) (construing the Supreme Court's

*Vonn* decision as "instruct[ing] us to review violations of Rule 11 for plain error if the defendant did not object before the district court"); *United States v. Syal*, 963 F.2d 900, 903, 905-07 (6th Cir. 1992) (reviewing a Rule 11 violation for harmless error, where the defendant raised his Rule 11 claim in a motion to withdraw his guilty plea brought prior to sentencing); *United States v. Payton*, No. 08-1628, 380 F. App'x 509, 512 (6th Cir. June 9, 2010) (reviewing a claim of an unknowing and involuntary plea for plain error "[b]ecause [the defendant] did not object at his Rule 11 plea hearing or otherwise seek to withdraw his plea before the district court"); *cf. Martin*, 668 F.3d at 791 & n.1 (noting that the defendant's statements at his sentencing, "[l]iberally construed," could "qualify as a timely objection" that triggered harmless error review of a claimed Rule 11 violation). *See generally United States v. Gibbs*, 182 F.3d 408, 431 (6th Cir. 1999) (holding that the harmless error standard applies so long as the defendant "brought the issue . . . to the attention of the district court").[7] Accordingly, having cleared away the procedural underbrush and determined that the harmless error standard of Rule 11(h) governs our review, we now proceed to the even more challenging and nuanced substantive issues raised by this appeal.

B.    **Defendant Must Be Permitted to Withdraw His Guilty Plea Due to the Incorrect Statement of the Statutory Penalty Range Made to Him in His Plea Agreement and at the Plea Hearing, Where This Misstatement Affected Defendant's Substantial Rights by Changing the Calculus Under Which He Weighed and Accepted the Government's Plea Offer.**

1.    **In the Wake of the Supreme Court's Decision in *Dorsey,* the District Court Violated Rule 11 by Misinforming Defendant of the Statutory Penalty Range for the Offense to Which He Pled Guilty.**

Under Rule 11(b)(1), before a district court may accept a guilty plea, it must "inform the defendant of, and determine that the defendant understands," a number of

---

[7]We note that a number of other circuits also would apply harmless error review under the circumstances presented here, where a defendant did not raise any objections at his plea hearing but then moved prior to sentencing to withdraw his guilty plea on the basis of a purported Rule 11 violation. *See, e.g., United States v. Ortiz-Garcia*, 665 F.3d 279, 285 (1st Cir. 2011); *United States v. Gray*, 581 F.3d 749, 752-53 (8th Cir. 2009); *United States v. Hairston*, 522 F.3d 336, 341 (4th Cir. 2008); *United States v. Harrington*, 354 F.3d 178, 183 (2d Cir. 2004); *United States v. Powell*, 354 F.3d 362, 367 (5th Cir. 2003); *United States v. Fernandez*, 205 F.3d 1020, 1027-28 (7th Cir. 2000).

rights and other pertinent considerations, including "any maximum possible penalty, including imprisonment, fine, and term of supervised release," and "any mandatory minimum penalty." Fed. R. Crim. P. 11(b)(1)(H)-(I). In his second motion to withdraw his guilty plea, Defendant contended that the district court violated these Rule 11 provisions by misinforming him of the statutory penalty range he faced for the offense to which he pled guilty. Although the penalty range set forth in Defendant's plea agreement and identified by the district court at Defendant's plea hearing was correct under the then-current law of this Circuit, we agree that this penalty range must now be viewed as mistaken in light of the Supreme Court's supervening decision in *Dorsey*, __ U.S. __, 132 S. Ct. 2321, with the result that Rule 11 was violated in the course of taking Defendant's guilty plea.

Count One of the two-count indictment in this case charged Defendant with possession with intent to distribute 50 grams or more of crack cocaine. Under the express terms of his plea agreement, Defendant "agree[d] to enter a voluntary plea of guilty to a lesser included offense of the charge in Count One of the indictment" — namely, "the crime of possessing with intent to distribute 5 grams or more of cocaine base." (R. 21, Plea Agreement at ¶ 3, PageID 36.) Under the applicable statutory provision at the time Defendant committed this offense in September of 2009, the drug offense to which Defendant agreed to plead guilty, involving five or more but less than fifty grams of crack cocaine, triggered a statutory sentencing range of five to forty years of imprisonment, *see* 21 U.S.C. § 841(b)(1)(B)(iii) (2009), and Defendant's plea agreement recited this sentencing range, (*see* R. 21, Plea Agreement at ¶ 4, PageID 36). Upon the enactment of the FSA in 2010, however, the penalty provisions of § 841(b)(1) have been amended with respect to crack cocaine offenses, with the statute now providing that a drug offense must involve at least 28 grams of crack cocaine in order to subject a defendant to the five-to-forty-year sentencing range set forth at § 841(b)(1)(B).

As the district court and the parties correctly recognized at Defendant's March 21, 2011 plea hearing, the enactment of the FSA had a potential impact on the district

court's obligation under Rule 11(b)(1)(H)-(I) to inform Defendant of the statutory penalty range for the offense to which he was pleading guilty.  (*See* R. 33, Plea Hearing Tr. at 4-5, 8-9, PageID 118-19, 122-23.)  In particular, the district court observed that the FSA had the effect of "lower[ing] the sentence" for certain crack cocaine offenses, and it decided that the "safest course of action," in light of the uncertain state of the law in the wake of the FSA's enactment, was to advise Defendant of the two alternative statutory penalty ranges he faced if "the new act applies" or if it "does not apply."  (*Id.* at 9-12, PageID 123-26.)[8]  In carrying out this chosen course of action, however, the district court elected to advise Defendant that he potentially faced either (i) the five-to-forty-year statutory penalty range identified in his plea agreement, or (ii) an increased statutory penalty range of ten years to life imprisonment.  (*See id.* at 11-12, 15-16, PageID 125-26, 129-30.)

Regrettably, judges do not have a crystal ball, and this advice turned out to be inaccurate.  While the district court was forced to speculate as to the potential impact of the FSA, we have the benefit of hindsight — namely, the *Dorsey* decision, which was not available to the district court — that enables us to ascertain the correct statutory penalty range for the offense to which Defendant pled guilty.  In *Dorsey*, __ U.S. at __, 132 S. Ct. at 2326, the Supreme Court held that the FSA's "more lenient penalty provisions apply to offenders who committed a crack cocaine crime before August 3, 2010, but were not sentenced until after August 3."  Because Defendant was not sentenced until September of 2011, well after the effective date of the FSA, the district court should have applied the § 841(b)(1) penalty provisions as amended by the FSA in computing Defendant's statutory penalty range and advising him of this range at the plea hearing.  More specifically, for the drug offense to which Defendant agreed to plead guilty, involving "five grams or more of cocaine base," (R. 21, Plea Agreement at ¶ 3,

---

[8]Interestingly, in its discussion of the potential impact of the FSA, the district court appeared to anticipate the Supreme Court's decision in *Dorsey,* opining that "the intent of Congress was for the Fair Sentencing Act to be applied to all sentences that were imposed after the act was passed." (*Id.* at 9, PageID 123.)  As noted earlier, however, this view ran counter to the law of this Circuit at the time, which held that the FSA lacked any expression of congressional intent that would overcome the usual rule that a defendant should be subject to the penalties in place at the time he committed his offense. *See Carradine*, 621 F.3d at 580.

PageID 36), Defendant should have been advised that he was subject to the statutory penalty range for drug offenses involving less than 28 grams of cocaine base — *i.e.,* zero to twenty years of imprisonment, *see* 21 U.S.C. § 841(b)(1)(C) (2011).  Because he was instead informed that he faced a five-to-forty-year statutory sentencing range, and perhaps even a higher range of ten years to life imprisonment, we conclude that this advice violated Rule 11(b)(1)(H)-(I) as an inaccurate statement of the statutory penalty range for the offense to which Defendant pled guilty.

In resisting this conclusion at oral argument,[9] the Government first suggested that Defendant remains ineligible for the zero-to-twenty-year statutory penalty range established under the FSA for drug offenses involving less than 28 grams of crack cocaine, in light of his admissions in his plea agreement (i) that he "unlawfully, knowingly, and intentionally possess[ed] with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of cocaine base," and (ii) that, "for the purpose of determining the applicable advisory sentencing range under the United States Sentencing Guidelines, . . . the total amount of cocaine base for which he is responsible is between at least 50 grams but less than 150 grams."  (R. 21, Plea Agreement at ¶¶ 8(a),(g), PageID 38, 40.)  As we noted at the outset, this argument amounts to a claim of "no harm, no foul" — in the Government's view, Defendant cannot complain about a five-to-forty-year statutory penalty range when the drug quantity to which he has admitted would trigger this elevated range even in the wake of *Dorsey*.

Although this argument has some superficial appeal, we find that it unduly discounts the important role of Rule 11 in ensuring that a defendant is fully informed of the consequences of his guilty plea.  Defendant's admissions to particular quantities of crack cocaine appear in an entirely separate portion of the plea agreement from the paragraph that describes the five-grams-or-more offense to which Defendant agreed to

---

[9] As noted earlier, the parties had already completed their appellate briefing before *Dorsey* was issued, and neither side sought leave to file supplemental briefs addressing the impact of this Supreme Court decision.  Thus, the parties' respective positions on this point must be gleaned largely from their contentions at oral argument.

plead guilty, and they serve wholly distinct purposes. Specifically, it is evident from the plea agreement itself that Defendant's admissions to quantities of between fifty and 150 grams of crack cocaine were intended to establish a factual basis for his guilty plea, and to demonstrate to the district court how the parties determined Defendant's relevant conduct under the Sentencing Guidelines and arrived at a recommended advisory sentencing range of 188 to 235 months of imprisonment. Although these recitations served their intended purposes,[10] the Government has failed to identify a basis in the law for us to give double duty to these admissions, allowing us to read the five-grams-or-more charge to which Defendant agreed to plead guilty, coupled with these other terms of the plea agreement, as effectively demonstrating Defendant's knowing and voluntary decision to plead guilty to a 28-grams-or-more offense under the post-FSA version of § 841(b)(1)(B).

Certainly, nothing in the plea agreement itself evidences the parties' understanding that the district court was free to look to the factual basis for Defendant's guilty plea and his admissions as to relevant conduct in order to determine how to advise Defendant under Rule 11(b)(1)(H)-(I) as to the statutory penalty range he faced for the offense to which he was pleading guilty. To the contrary, under the law as the parties uniformly understood it at the time — *i.e.,* with the FSA not applicable in determining Defendant's statutory sentencing range — the parties expressed their shared belief and agreement that Defendant faced a five-to-forty-year statutory penalty range, (*see* R. 21, Plea Agreement at ¶ 4, PageID 36), despite Defendant's admission elsewhere in the plea agreement to a fifty-grams–or-more crack cocaine offense that would have triggered an

---

[10]Incidentally, and as the district court observed in its opinion denying Defendant's second motion to withdraw his plea, (*see* R. 52, 9/8/2011 Mem. Op. at 15-16, PageID 523-24), Defendant's admission to a drug quantity of 50 grams or more of crack cocaine also served to avoid any possible concern under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), that Defendant's sentence might exceed the maximum statutory penalty to which Defendant was subject in light of the facts to which he admitted upon entering his guilty plea. Regardless of the pre- or post-FSA state of the law, Defendant's 188-month term of imprisonment falls below the lowest possible statutory maximum (twenty years) that could possibly apply in light of the facts admitted by Defendant in his plea agreement and at the plea hearing. Thus, the district court correctly recognized that "this action does not involve any *Apprendi* issues." (R. 52, 9/8/2011 Mem. Op. at 16, PageID 524.) While this absence of an *Apprendi* violation is irrelevant to our inquiry whether there was a Rule 11 violation at Defendant's plea hearing, we consider below the extent to which the principles of *Apprendi* might inform the question whether this Rule 11 error was harmless.

elevated statutory penalty range of ten years to life imprisonment under the pre-FSA sentencing regime. Consistent with this view reflected in the plea agreement, counsel for the Government expressly confirmed at the plea hearing that Defendant's statutory penalty range should be "set by the charge to which he is pleading guilty," and not by the relevant conduct to which he admitted elsewhere in the plea agreement. (R. 33, Plea Hearing Tr. at 6, PageID 120.) Nowhere in the course of this appeal has the Government identified any authority for its attempt to now retreat from this position, and to instead contend that a district court is permitted to stray beyond the four corners of the specific offense to which a defendant has agreed to plead guilty in determining how to advise him of the statutory penalty range he faces for this offense.[11]

Alternatively, the Government suggested at oral argument that the FSA has merely introduced a potential ambiguity into drug offenses charged by reference to the crack cocaine quantities that triggered escalating tiers of punishment under the pre-FSA version of § 841(b)(1) — *e.g.,* five or fifty grams of crack cocaine, as opposed to the 28 or 280 grams of crack cocaine that now are necessary under the FSA to invoke these same escalating penalty ranges — and that the totality of Defendant's plea agreement serves to resolve any such potential ambiguity here. In particular, the Government observes that the plea agreement's statement of the offense to which Defendant pled guilty — "possessing with intent to distribute 5 grams or more of cocaine base," (R. 21, Plea Agreement at ¶ 3, PageID 36) — fails to distinguish between or exclude the possibilities (i) that this drug offense involved at least five but less than 28 grams of

---

[11]In our view, such an understanding of the district court's obligations under Rule 11(b)(1)(H)-(I) would be problematic and unworkable. Presumably, if a district court were permitted to leaf through the entirety of a plea agreement in order to find provisions that might potentially have a bearing upon the defendant's statutory penalty exposure, this authority would quickly transform into a duty, lest the district court misstate the defendant's statutory penalty range by failing to appreciate the impact of the defendant's admissions as to the factual basis for his plea or his relevant conduct. Should a district court, for example, factor in relevant conduct or factual basis recitations that could potentially expose the defendant to additional charges, even though the plea agreement does not call for the defendant to plead guilty to these charges or perhaps even mention these additional offenses? We do not read Rule 11(b)(1)(H)-(I) as requiring such detective work, which would threaten to place the district court in the untenable position of a surrogate prosecutor who must determine the potential sentencing exposure arising from any criminal conduct to which a defendant might admit anywhere in his plea agreement. Again, this potential sentencing exposure might be relevant (as discussed below) to a harmless error inquiry, but we are hesitant to construe Rule 11(b)(1)(H)-(I) as demanding that the district court look beyond the specific offense to which a defendant has agreed to plead guilty in discharging its obligation to advise the defendant of his statutory penalty range.

crack cocaine, or (ii) that this drug offense involved 28 grams or more of crack cocaine.**12** Yet, as discussed above, in identifying the factual basis for his guilty plea, Defendant admitted that he "unlawfully, knowingly, and intentionally possess[ed] with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of cocaine base," and that, for purposes of computing his advisory Sentencing Guideline range, the "total amount of cocaine base for which he [wa]s responsible [wa]s between at least 50 grams but less than 150 grams." (R. 21, Plea Agreement at ¶¶ 8(a),(g), PageID 38, 40.) It follows, in the Government's view, that the five-grams-or-more offense to which Defendant pled guilty is more accurately characterized as a 28-grams-or-more offense under the post-FSA version of § 841(b)(1), with the result that the district court accurately advised Defendant of the five-to-forty-year statutory penalty range for this offense.**13**

This argument, clever though it may be, runs afoul of the evident intent of the parties as expressed in Defendant's plea agreement. Although Defendant acknowledged, in establishing the factual basis for his plea, that he had engaged in a drug offense

---

**12**Presumably, the upper-bound quantity for this latter hypothetical offense would be fifty grams of crack cocaine, as a quantity of fifty grams or more of crack cocaine would have triggered the next tier of escalating penalty ranges under the pre-FSA version of § 841(b)(1). *See* 21 U.S.C. § 841(b)(1)(A)(iii) (2009). In fact, Defendant's plea agreement seemingly confirms this view, as it distinguishes between the fifty-grams-or-more offense charged in Count One of the indictment and the five-grams-or-more "lesser included offense" to which Defendant pled guilty.

**13**The Government further suggests in its brief on appeal that the parties essentially agreed during their plea negotiations that Defendant "would be in no different position by pleading to an offense involving 5 or more grams than if he was charged with and pleaded to possessing 28 or more grams." (Appellee's Br. at 48.) This claimed "agreement," however, rests on a pair of e-mail messages sent by Assistant U.S. Attorney Brent Hannafan to defense counsel, Michael Holley. In the first, Mr. Hannafan floats the notion that the Government could file an information charging Defendant with possession with intent to distribute 28 grams or more of crack cocaine, and that the plea agreement could be modified to reflect Defendant's plea of guilty to this 28-grams-or-more offense. (*See* R. 55-1, 3/15/2011 E-mail, PageID 605.) In the second, however, Mr. Hannafan abandons this proposal of filing an information charging a 28-grams-or-more crack cocaine offense, in light of his understanding (and the Department of Justice's then-current position) that the FSA's revised penalty scheme would not apply to Defendant's sentencing. (*See* R. 55-1, 3/15/2011 E-mail, PageID 606.)

Plainly, this one-sided "discussion," in which the Government first proposed but then promptly abandoned a plan to address the potential ambiguity introduced by Defendant's plea to a five-grams-or-more crack cocaine offense, cannot be said to evidence any "agreement" by Defendant or his counsel that the five-grams-or-more offense to which he pled guilty was one and the same as a 28-gram-or-more offense under the FSA's revised penalty scheme for crack cocaine offenses. Indeed, defense counsel made precisely this point at Defendant's sentencing, opining that the two e-mails sent by Mr. Hannafan reflected a "unilateral[]" offer by the Government that it later deemed "not necessary," with the Government ultimately remaining content that Defendant would "just . . . plead to the five grams" referenced in the plea agreement. (R. 60, Sentencing Hearing Tr. at 5, PageID 593.)

involving fifty grams or more of crack cocaine, he and the Government nonetheless agreed that he would plead guilty to the ***"lesser included offense"*** of possessing with intent to distribute five grams or more of crack cocaine. (R. 21, Plea Agreement at ¶ 3, Page ID 36 (emphasis added).) Under the Government's proposed reading of the plea agreement, however, this "lesser included offense" would be deemed to involve 28 grams or more of crack cocaine, resulting in a post-FSA statutory penalty range of five to forty years of imprisonment under the amended § 841(b)(1)(B). Yet, the offense charged in Count One of the indictment, involving fifty grams or more of crack cocaine, is also subject to this same post-FSA 28-grams-or-more statutory penalty range of five to forty years of imprisonment; in order to step to the next penalty tier of ten years to life imprisonment under the FSA, the offense would have had to involve at least 280 grams of crack cocaine, *see* 21 U.S.C. § 841(b)(1)(A)(iii) (2011), but the highest crack cocaine quantity referenced anywhere in Defendant's plea agreement is 150 grams, (*see* R. 21, Plea Agreement at ¶ 8(g), PageID 40).

As we have recognized, plea agreements must be interpreted in accordance with ordinary contract principles, with the intent of the parties ascertained primarily through the chosen wording of their agreement, and with any ambiguities construed against the Government. *See United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007); *Smith v. Stegall*, 385 F.3d 993, 999 (6th Cir. 2004). In order to give meaning and effect to the parties' statement in the plea agreement that Defendant would be permitted to plead guilty to a "lesser included offense," the charge to which Defendant pled guilty must be viewed as a less severe variant of the fifty-grams-or-more offense charged in the indictment, with a correspondingly reduced statutory penalty range.[14] The only way to

---

[14]The Government seemingly acknowledges this point in its brief on appeal, stating that despite the parties' agreement during their plea negotiations that "defendant possessed over 50 grams of crack as charged in Count One of the indictment, the United States agreed he could plead to the charge of possessing 5 or more grams of crack." (Appellee's Br. at 47-48.) This promise would be illusory if, as the Government now contends, Defendant's admission in his plea agreement to possession of over 50 grams of crack cocaine were deemed to relieve the Government of the consequences of its agreement to accept a plea of guilty to a lower-quantity offense than Defendant's admission would otherwise have established.

To be sure, the parties could have negotiated over the contingency that the FSA might apply at Defendant's sentencing, and could have agreed that the drug quantity for the offense to which Defendant pled guilty would trigger the same five-to-forty-year statutory penalty range regardless of whether

achieve this intended result, as expressed by the parties through their agreement that Defendant would plead guilty to "a lesser included offense of the charge in Count One of the indictment," (R. 21, Plea Agreement at ¶ 3, PageID 36), is to construe the offense to which Defendant pled guilty as involving between five and 28 grams of crack cocaine — an offense which, in the wake of the FSA, is subject to a statutory penalty range of zero to twenty years of imprisonment. Because Defendant was not advised of this penalty range at his plea hearing, we conclude that Rule 11 was violated.

### 2.     The District Court's Rule 11 Violation Was Not Harmless.

Having concluded that the district court failed (albeit understandably) to anticipate the Supreme Court's ruling in *Dorsey* and accurately advise Defendant of the post-FSA statutory penalty range for the offense to which he pled guilty, we next must consider whether this Rule 11 violation was harmless — that is, whether this error did "not affect [Defendant's] substantial rights." Fed. R. Crim. P. 11(h). We have explained that "a plea that is not voluntary is undoubtedly an impairment of a defendant's substantial rights," and that "[f]or a plea to be voluntary, the defendant must understand the direct consequences of a plea, which includes the maximum and minimum sentences that may be imposed." *Martin*, 668 F.3d at 792. Nonetheless, flaws in a district court's advice to a defendant regarding his sentencing exposure do not necessarily render the defendant's guilty plea involuntary and affect his substantial rights, so long as "the defendant reasonably could be said to have understood the consequences of his plea regardless of any omission or misinformation provided by the district court." *Martin,* 668 F.3d at 793.

Our prior case law provides considerable guidance in resolving the harmless error inquiry presented here. Most notably, in *Pitts v. United States*, 763 F.2d 197, 199 (6th Cir. 1985), the district court mistakenly informed the defendant while taking his guilty plea that he faced a maximum possible sentence of 25 years of imprisonment and

---

Defendant was entitled to the benefit of this new enactment. In fact, and as noted above, the Government evidently proposed such a solution at one point in the parties' plea negotiations. The plea agreement ultimately arrived at by the parties includes no such provision, however, and we are not at liberty to construe its silence on this point in favor of the Government.

a $25,000 fine, when in fact his maximum sentencing exposure was fifteen years' imprisonment and a $20,000 fine. We remanded for an evidentiary hearing to "determine whether [the defendant] would not have pleaded guilty but for the misstatement," emphasizing that the district court had made "affirmative misstatements of the maximum possible sentence," and observing that "[n]umerous cases have held that misunderstandings of this nature invalidate a guilty plea." *Pitts*, 763 F.2d at 201 (collecting cases). In so ruling, we rejected the Government's appeal to the defendant's plea agreement as mitigating the harm from the misinformation he was given:

> Although the government argues that the presence of the plea agreement in this case renders [the district court's] misadvice insignificant, the effect of the plea agreement may have been to exacerbate the problem. When considering a plea agreement, a defendant might well weigh the terms of the agreement against the maximum sentence he could receive if he went to trial. When the maximum possible exposure is overstated, the defendant might well be influenced to accept a plea agreement he would otherwise reject.

763 F.2d at 201 (footnote omitted).

Similarly, in *United States v. Stubbs*, 279 F.3d 402, 405 (6th Cir. 2002), *abrogated on other grounds by Harris v. United States*, 536 U.S. 545, 122 S. Ct. 2406 (2002), the defendant pled guilty to a violation of 18 U.S.C. § 924(o), and his plea agreement provided that he was subject to a mandatory term of sixty months' imprisonment to be served consecutive to the sentence imposed for his other offenses. We held that this mandatory consecutive sixty-month sentence resulted from a mistaken application of a different statutory provision, 18 U.S.C. § 924(c), and that "[i]f Defendant had been properly sentenced under § 924(o), he would not have been subject to a mandatory minimum sentence and there would not have been a requirement that the sentence be served consecutive to any other sentence[] imposed." *Stubbs,* 279 F.3d at 410. We then concluded, in accordance with *Pitts* and other decisions, that this mistake served to invalidate the defendant's guilty plea:

> The record reveals that neither Defendant, his counsel nor the district court was aware that Defendant was not subject to a mandatory consecutive minimum 60-month sentence under § 924(o). There is no

record evidence which demonstrates that Defendant was aware of the true nature of the crime charged and the proper statutory consequences of his guilty plea.

Furthermore, it is reasonably probable that but for the misinformation as to Defendant's proper statutory sentence, Defendant would not have pleaded guilty. Here, Defendant was ready to proceed to trial when his counsel suggested that he plead guilty. Moreover, Defendant had moved to withdraw his guilty plea based in part on the ground that his counsel had not properly informed him of the nature of the charge against him, albeit for a different reason. It is therefore reasonably probable that had Defendant known that he was not subject to a mandatory consecutive 60-month sentence, but rather was subject to a sentence of up to twenty years that could be served concurrent to any other sentence[] received, Defendant would not have pleaded guilty.

279 F.3d at 412 (citation omitted).[15]

In contrast, we have determined on other occasions that a district court's misstatement of a defendant's sentencing exposure was harmless because the defendant had notice through other sources of the correct statutory penalty range. In *Martin,* 668 F.3d at 790, 793, for example, the district court initially stated at the defendant's plea hearing that each of the two offenses to which he was pleading guilty carried a five-year statutory minimum sentence, but the court then proceeded to direct the defendant's attention to a passage in his plea agreement that "unequivocally stated correctly" that he

---

[15]Under comparable circumstances, other circuits have held that a district court's misstatement of the statutory penalty range faced by a defendant could not be deemed harmless error under Rule 11, but instead provided grounds for permitting the defendant to withdraw his guilty plea. *See, e.g., Hairston,* 522 F.3d at 341 (finding that the misinformation provided to the defendant at his plea hearing "completely changed the sentencing calculus," where the defendant had been advised "when he pleaded guilty that his best-case scenario was a thirty-year prison term," but he then "learned at sentencing that his best-case scenario in fact was a forty-five-year prison term"); *Harrington,* 354 F.3d at 185-86 (noting that the district court had "informed the defendant that a mandatory minimum sentence applied when one did not," and explaining that "[b]ecause a mandatory minimum sentence represents such a strong inducement to plea[d], where a defendant has been informed . . . that he is facing such a sentence, that information is presumptively significant in the defendant's decision-making"); *United States v. Santo,* 225 F.3d 92, 100 (1st Cir. 2000) (finding that the defendant was entitled to withdraw his guilty plea after being misinformed of a five-year statutory minimum sentence rather than the ten-year minimum that actually applied, where the defendant "reasonably could have expected from the information given, including in particular the inaccurate five-year minimum, that he might receive a significantly lighter punishment than the fourteen-year sentence he eventually received"); *Fernandez,* 205 F.3d at 1030 (finding that a Rule 11 violation was not harmless where the defendant never was "alerted to the mandatory minimum sentences applicable in his case," and thus his "decision to plead guilty could not have been fully informed [by] the penalties he faced"); *United States v. Guerra,* 94 F.3d 989, 995 (5th Cir. 1996) (observing that because of the district court's Rule 11 violation, the defendant "did not know that going to trial would only put him at risk of *half* the possible sentence he was informed he would face," and concluding that this misinformation left the defendant "unaware of the true nature of the options he faced" as he elected to plead guilty).

faced an overall mandatory minimum sentence of 32 years' imprisonment. We found that despite this "minimally conflicting information" provided by the district court regarding the defendant's minimum sentence, the defendant's statements at the plea and sentencing hearings "amply demonstrate[d] that [the defendant] adequately understood the direct consequences of his plea at the time of his plea hearing." *Martin*, 688 F.3d at 793-94.

Likewise, in *United States v. Ospina*, 18 F.3d 1332, 1334 (6th Cir. 1994), the district court correctly advised the defendant of a five-year mandatory term of imprisonment, but then misleadingly "used discretionary rather than mandatory language in discussing whether the sentence would run consecutively" to a state prison sentencing the defendant was then serving. We concluded that any resulting Rule 11 violation was harmless, where the "defendant knew before pleading guilty that he could be sentenced to a five-year term of imprisonment to be served upon completion of his state term of imprisonment," he "raised no objection" to a provision in his presentence report disclosing a "statutory mandate of a 5 years consecutive sentence," and his counsel acknowledged at sentencing that the defendant was aware "that he pled guilty to a five-year mandatory consecutive sentence." *Ospina*, 18 F.3d at 1334; *see also Williams v. United States*, No. 00-1687, 47 F. App'x 363, 365-66, 368-69 (6th Cir. Sept. 25, 2002) (holding that the district court had not committed plain error by erroneously stating at a plea hearing that the defendant faced a 60-month mandatory minimum sentence, where the defendant's presentence report accurately disclosed the correct 84-month minimum sentence and the defendant neither objected to this portion of the presentence report nor moved to withdraw his plea). *See generally Syal*, 963 F.2d at 906 (explaining that "[s]ubstantial rights may not be affected when a defendant makes no claim that he did not know of the [potential penalty information omitted from the district court's Rule 11 disclosures] and therefore cannot claim that the lack of information affected his decision whether to enter a plea of guilty"); *Pitts,* 763 F.2d at 200 (noting that a plea may be voluntary and intelligent despite the omission of required information because "[a] defendant may learn of the information not relayed to him by the trial court from other sources"); *Gray,* 581 F.3d at 754 ("Most cases in which Rule 11 violations were found

to be harmless involve situations where the defendant was aware, or could have been made aware, of the omitted information through other means, e.g., a plea agreement containing the information the court omitted during the plea hearing.").

In another series of decisions in which we have declined to provide a remedy for a district court's misstatement of a defendant's sentencing exposure, we have pointed to the absence of any indication that the defendant would have declined the Government's plea offer if accurately informed of the correct statutory penalty range. In one recent case featuring facts similar to those presented here, the defendant argued that his plea was unknowing because the district court incorrectly advised him of the pre-FSA five-to-forty-year statutory penalty range for his crack cocaine offense, rather than citing the correct zero-to-twenty-year range that applied in the wake of the Supreme Court's *Dorsey* decision. *See United States v. Tyus*, No. 12-5614, 2013 WL 2097164, at *1 (6th Cir. May 15, 2013). We held that the defendant's challenge was subject to plain error review in light of his "fail[ure] to object below" and found that the defendant could not meet this standard, explaining that he had not "suggest[ed] that the sentencing ranges used by the government and the district court led him to accept a plea he otherwise would have rejected," nor had he "claim[ed] to have pleaded guilty with the expectation of a lower sentencing range, only to be ambushed at sentencing with a greater sentence." *Tyus,* 2013 WL 2097164, at *2.

Similarly, in *United States v. Mitchell*, No. 08-3126, 398 F. App'x 159, 161 (6th Cir. Oct. 7, 2010), the district court erroneously advised the defendant that two of the counts to which he pled guilty carried statutory sentencing ranges of twenty years to life imprisonment, when in fact only one of these offenses was subject to a statutory minimum penalty of twenty years, while the other triggered only a ten-year mandatory minimum sentence. We acknowledged that "where, as here, a district court overstates the maximum potential sentence to which a defendant may be subject, the misinformation may deprive the defendant of an understanding of the actual consequences he faces and the true nature of the options available to him, thereby making his plea unintelligent." *Mitchell,* 398 F. App'x at 162 (citing *Stubbs* and *Pitts*).

We noted, however, that the defendant had "neither indicated that he was confused by the district court's misstatements nor ha[d] he attempted to withdraw his plea." 398 F. App'x at 162-63. Accordingly, because the defendant had not "requested the only relief for which he would be eligible," we rejected his challenge to the validity of his guilty plea. 398 F. App'x at 163; *see also United States v. Kennedy,* No. 10-5358, 493 F. App'x 615, 616 (6th Cir. July 20, 2012) (finding that an error in advising the defendant of the maximum sentence he faced did not affect his substantial rights, where the defendant "fail[ed] to maintain that he would not have pled guilty in the first place or even that he would not plead guilty today if we remanded the case to the district court"); *United States v. Ferguson,* No. 96-6029, 1997 WL 764471, at *5-6 (6th Cir. Dec. 3, 1997) (finding that the district court violated Rule 11 by failing to inform the defendant of the maximum penalty for the four drug offenses to which he pled guilty, but concluding that this error was harmless because the defendant "never claimed that he would have refused the plea bargain had he been informed of the maximum possible penalty," nor did he "contend on appeal that this information would have altered his decision to plead guilty").[16]

Returning to the present case, we find that the outcome is governed by our prior decisions in *Pitts* and *Stubbs*, and that this case features none of the factors cited in our other above-cited rulings as evidencing the absence of an impairment of the defendant's substantial rights. In this case, as in *Pitts* and *Stubbs*, the district court materially overstated the defendant's sentencing exposure. In particular, Defendant was advised that he faced a five-to-forty-year statutory penalty range, but his range for the offense of conviction actually was zero to twenty years in the wake of the FSA and *Dorsey*'s interpretation of this 2010 enactment. Moreover, this misstatement of the statutory

[16]It is important to emphasize that in the above-cited cases of *Tyus*, *Mitchell*, and *Kennedy,* we reviewed claimed Rule 11 violations for plain error, rather than applying the harmless error standard that governs here. Nonetheless, whether under harmless or plain error review, we must inquire whether the error at issue affected the defendant's substantial rights, with the "important difference" that under the plain error standard, "[i]t is the defendant rather than the Government who bears the burden of persuasion" as to this and the remaining elements of the standard. *United States v. Olano*, 507 U.S. 725, 734-35, 113 S. Ct. 1770, 1777-78 (1993); *see also Vonn*, 535 U.S. at 62-63, 122 S. Ct. at 1048. Thus, we believe it appropriate to look to our decisions in *Tyus*, *Mitchell*, and *Kennedy* for guidance as to whether a Rule 11 error may be said to have affected a defendant's substantial rights, so long as we are mindful not to impose a burden on Defendant here to establish such an effect on his substantial rights.

penalty range had a ripple (and equally material) effect on the Sentencing Guideline calculations set forth in Defendant's plea agreement and used to determine his agreed-upon sentence. Because the parties agreed that Defendant was subject to sentencing under the career offender guideline, U.S.S.G. § 4B1.1, the forty-year statutory maximum sentence disclosed in the plea agreement triggered a base offense level of 34 under U.S.S.G. § 4B1.1(b)(2), and this, in turn, led the parties to calculate a recommended advisory Sentencing Guideline range of 188 to 235 months of imprisonment. (*See* R.21, Plea Agreement at ¶¶ 10(a)(ii),(c), PageID 41-43.) The parties then agreed to a 188-month sentence at the bottom of this advisory range. (*Id.* at ¶ 11, PageID 43.) If the parties and the district court had anticipated the *Dorsey* decision and correctly understood that Defendant faced a twenty-year rather than forty-year statutory maximum sentence, Defendant's base offense level under the career offender guideline would have been 32 rather than 34, *see* U.S.S.G. § 4B1.1(b)(3), resulting in a reduced advisory Sentencing Guideline range of 151 to 188 months of imprisonment. (*See* R.47, Defendant's 8/22/2011 Second Motion to Withdraw Plea at 4, PageID 399.)

It seems evident to us that this is a significant change in the sentencing calculus under which Defendant weighed the Government's plea offer. Under the information disclosed to Defendant in the plea agreement and at the plea hearing, he was to receive a 188-month sentence that was less than half of the forty-year statutory maximum sentence he faced for the offense to which he pled guilty, and that placed him at the very bottom of the 188-to-235-month advisory Sentencing Guideline range determined by the parties. What is more, by securing the Government's agreement to allow him to plead guilty to a lesser-included offense, Defendant believed he had avoided the pre-FSA statutory penalty range of 10 years to life imprisonment he would have faced for the 50-grams-or-more crack cocaine offense charged in the indictment, as well as the resulting base offense level of 37 under the career offender guideline, *see* U.S.S.G. § 4B1.1(b)(1).

Yet, in the wake of the FSA, this deal looks considerably less advantageous to Defendant. The 188-month sentence imposed by the district court is not far below the twenty-year statutory maximum for the offense to which Defendant pled guilty,

particularly when compared to the "discount" of well over half of the forty-year statutory maximum disclosed by the district court and in the plea agreement. Moreover, Defendant's 188-month sentence sits at the upper bound of the post-FSA advisory Sentencing Guideline range of 151 to 188 months, rather than at the lower bound of the 188-to-235-month range set forth in the plea agreement. Against this backdrop, Defendant seemingly did not have a great deal to lose by rejecting the Government's plea offer and going to trial on the fifty-gram-or-more crack cocaine offense charged in Count One of the indictment; under the FSA, the statutory penalty range for this offense is zero to twenty years of imprisonment, and Defendant's advisory Sentencing Guideline range for this offense presumably would have been somewhat below this twenty-year maximum,[17] so that his resulting sentence upon conviction at trial presumably would not have greatly exceeded (if at all) the 188-month sentence called for in the plea agreement.

As *Pitts* and *Stubbs* make clear, this sort of material overstatement of a defendant's sentencing exposure, as provided to Defendant in his plea agreement and reiterated by the district court at the plea hearing, gives rise to a reasonable probability that a "defendant might well be influenced to accept a plea agreement he would otherwise reject." *Pitts,* 763 F.2d at 201; *see also Stubbs,* 279 F.3d at 412. Indeed, Defendant expressly asserted in his motion to withdraw his guilty plea that "had he been aware of" the correct statutory penalty range of zero to twenty years, "he would not have entered his guilty plea," (R. 47, 8/22/2011 Second Motion to Withdraw Plea at 4-5, PageID 399-400), and he has steadfastly maintained this position at sentencing, (R. 60, Sentencing Hearing Tr. at 7, PageID 595), and here on appeal. Nothing in the record casts doubt on this evidence of a reasonable probability that, but for the district court's Rule 11 error, Defendant would not have entered his guilty plea, and this suffices to establish an effect upon Defendant's substantial rights that overcomes a claim of

---

[17]We acknowledge that the advisory Sentencing Guideline range presumably would have been higher than the 151-to-188-month range identified in Defendant's second motion to withdraw his guilty plea, as Defendant would not have received credit for acceptance of responsibility. Defendant also would have lost a separate benefit conferred under the plea agreement — *i.e.,* dismissal of the second count of the indictment — although it is not clear how much a conviction on this additional charge would have contributed to Defendant's overall sentencing exposure.

harmless error.  *See Dominguez Benitez*, 542 U.S. at 83, 124 S. Ct. at 2340; *Martin*, 668 F.3d at 792-93.[18]

Moreover, this case lacks any of the considerations that have led us to conclude that a Rule 11 violation did not affect a defendant's substantial rights.  In contrast to some of our above-cited decisions, *see, e.g., Martin*, 668 F.3d at 793; *Ospina*, 18 F.3d at 1334-35, Defendant remained uninformed by any source that the district court had erred in advising him of a five-to-forty-year statutory penalty range, and that the correct penalty range was zero to twenty years of imprisonment.  In denying Defendant's second motion to withdraw his guilty plea, the district court adhered to its view, as backed by the then-current law of this Circuit, that Defendant faced a five-to-forty-year statutory sentencing range, and Defendant's presentence report reiterated this five-to-forty-year penalty range.  Likewise, in contrast to the circumstances presented in such cases as *Mitchell*, 398 F. App'x at 162-63, and *Tyus*, 2013 WL 2097164, at *2, the district court's Rule 11 violation here cannot be discounted as having had no effect upon Defendant's substantial rights by virtue of any failure on his part to attempt to withdraw his guilty plea or to insist that the correct statutory penalty range, if provided, would have led him decline the Government's plea offer.  To the contrary, and as explained, Defendant sought prior to sentencing to withdraw his guilty plea upon determining that he might well have been misadvised as to the correct post-FSA statutory penalty range he faced, and he has consistently asserted that this correct information, if provided, would have led him to forgo a guilty plea.

This leaves only the Government's broader contention, as advanced at oral argument, that the harmlessness of the district court's Rule 11 error may be demonstrated through Defendant's admissions in his plea agreement to drug quantities that, even in the wake of the FSA, would suffice to trigger the five-to-forty-year

---

[18]Certainly, the Government did not attempt to make a showing of harmless error in its brief on appeal, but instead took the position that the district court committed no Rule 11 error whatsoever, harmless or otherwise.  Even after the Supreme Court issued its decision in *Dorsey,* the Government made no effort to file a supplemental brief in which it advanced a claim of harmless error.  Since, as observed earlier, the Government bears the burden of demonstrating the harmlessness of a Rule 11 error that a defendant has properly preserved, *see Vonn*, 535 U.S. at 62-63, 122 S. Ct. at 1048, the Government seemingly cannot hope to carry this burden here.

statutory penalty range that was disclosed to Defendant in his plea agreement and at the plea hearing. As discussed earlier, however, we fail to see how the Government's claims about offenses it could have proven or relevant conduct to which a defendant has admitted for purposes of Sentencing Guideline calculations have any bearing on the pertinent district court obligations under Rule 11(b)(1)(H)-(I) — namely, to accurately inform a defendant of the statutory penalty range for the crime to which he is pleading guilty. For much the same reason, we view these Government appeals to other offenses and relevant conduct as immaterial to our determination of the harmlessness of any deviations from these Rule 11 obligations. The requirements of Rule 11(b)(1)(H)-(I), after all, are not designed to inform a defendant generally of the penalties he would face for any conduct to which he has admitted, nor to advise him of the pertinent penalties for the offenses charged in the indictment in the ***absence*** of a plea agreement. Rather, these Rule 11 requirements are intended to ensure that the defendant is informed of the penalty range he faces ***in light of*** the terms governing his specific agreement to plead guilty. The task of the district court, in other words, is not to alert the defendant to the universe of considerations that might be relevant to his plea negotiations with the Government, but to advise him more specifically of the factors bearing on his acceptance or rejection of the particular deal actually offered by the Government and reflected in the parties' plea agreement, so that he may make an informed decision whether to accept this arrangement and plead guilty in accordance with its terms. We find that the statements made to Defendant at the plea hearing failed to disclose all of this information, and that this error cannot be deemed harmless under the record and circumstances presented here.

In the end, we view the Government's argument as boiling down to the claim that, despite the confusion engendered by the enactment of the FSA and the failure of the parties and the district court to anticipate that this statute would govern Defendant's sentencing, Defendant nonetheless got a good deal that he was wise to accept. His 188-month sentence was exactly as promised in the plea agreement, this sentence avoids any possible *Apprendi* concerns as within the zero-to-twenty-year boundaries that govern in the wake of the FSA, and his admissions in his plea agreement evidence a quantity of crack cocaine in excess of 28 grams that would continue, under the post-FSA sentencing

regime, to trigger the five-to-forty-year statutory penalty range disclosed in the plea agreement. And, indeed, all of these considerations might well justify the Government's confidence that its plea offer to Defendant was a good one, and that Defendant might well face a greater sentence if he insists upon withdrawing his guilty plea and proceeding to trial. As we observed at the outset, Defendant perhaps would be well advised to heed the maxim to "be careful what you wish for."

Yet, while we acknowledge the pragmatic force of the Government's position, our precedents demand a different approach for determining whether a Rule 11 error is harmless. As the Supreme Court has emphasized, the harmlessness inquiry must be performed from the defendant's perspective, and must focus on the question whether the requirements of the Rule, if satisfied, had a reasonable probability of leading the defendant to forgo a guilty plea and proceed to trial:

> When the record made for a guilty plea and sentencing reveals evidence, as this one does, showing both a controlled sale of drugs to an informant and a confession, one can fairly ask a defendant seeking to withdraw his plea what he might ever have thought he could gain by going to trial. The point of the question is not to second-guess a defendant's actual decision; if it is reasonably probable he would have gone to trial absent the [Rule 11] error, it is no matter that the choice may have been foolish. The point, rather, is to enquire whether the omitted warning would have made the difference required by the standard of reasonable probability . . . .

*Dominguez Benitez*, 542 U.S. at 85, 124 S. Ct. at 2341. In this case, Defendant has steadfastly maintained that he would have gone to trial if he had been correctly advised of the post-FSA statutory penalty range governing the offense to which he pled guilty, and the materiality of the district court's overstatement of this range, when considered against the backdrop of the plea offer extended by the Government and set forth in the plea agreement, satisfies us of the reasonable probability that the district court's Rule 11 violation could be expected to have had this impact on Defendant's plea deliberations. Accordingly, we hold that Defendant should have been permitted to withdraw his guilty plea, and we remand to the district court so that he may be allowed to do so.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above, we REVERSE the decision of the district court denying Defendant's second motion to withdraw his guilty plea, and we REMAND for further proceedings in accordance with this ruling.