NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0465n.06
Filed: June 29, 2007

No. 06-3435

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ADELBERTO MARRERO, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before: GIBBONS and COOK, Circuit Judges; CLELAND, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant-appellant Adelberto Marrero challenges the district court's refusal to permit the withdrawal of his plea of guilty to the crime of conspiracy to distribute and possess with intent to distribute heroin.

For the reasons below, we affirm the judgment of the district court.

I.

On March 16, 2005, a grand jury empaneled in the Northern District of Ohio issued an indictment charging a group of individuals, including Marrero, with conspiracy to distribute heroin

---

[*] The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

in violation of 21 U.S.C. § 846. A superseding indictment and second superseding indictment followed. In the second superseding indictment, dated August 31, 2005, the government charged Marrero with one count of conspiracy to distribute heroin in violation of 21 U.S.C. § 846 and two counts of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1). On September 21, 2005, Marrero entered a plea of not guilty to all three counts. Marrero retained Beverly Briggs and James Jenkins as defense counsel.

On December 5, 2005, the district court conducted *voir dire* in preparation for trial. December 6, 2005, the date on which Marrero's trial was scheduled to commence, counsel notified the court that Marrero had entered into a written plea agreement with the government. Under the terms of that agreement, Marrero agreed to plead guilty to the conspiracy count against him, with an understanding that the government would move for dismissal of the remaining two counts. During the change of plea hearing, the district court engaged in an extended colloquy with Marrero concerning his capacity to enter a guilty plea, the likely sentence to which Marrero would be subject, the rights surrendered upon entry of a plea of guilty, and the factual basis of Marrero's plea.

Prior to his sentencing, Marrero transmitted a letter, dated March 14, 2006, to the United States Attorney's Office. In that letter, Marrero alleged that his signature on the plea agreement was "forced from me without my knowledge and consent, and was the result of threats, coercion, and duress of imprisonment at the point of a gun,[1] all brought against me by my attorney in this case number." Marrero also claimed that prior to the entry of his plea, he was unaware that he could be subject to the harsh effects of the career criminal provisions of the Sentencing Guidelines. In his

---

[1]Marrero later clarified for the district court that he used the phrase "at the point of a gun" for dramatic effect and that his attorney did not actually threaten him with a weapon.

2

letter, Marrero attributed the mishandling of his case to James Jenkins and indicated that he wished to terminate Jenkins as defense counsel.

At Marrero's sentencing on March 17, 2006, the district court acknowledged receipt of the letter. The court informed Jenkins that he was no longer employed as defense counsel for Marrero and excused him. It then explored the nature of Marrero's concerns relating to his guilty plea in a lengthy exchange with Marrero under oath. Asked about his failure to mention any misdeeds by his attorney at his plea hearing, Marrero claimed he was "confused at the time." Marrero offered several variations on this theme throughout the hearing, insisting that he had been "nervous," "afraid," and unaware of the significance of the plea agreement he signed due to his distressed emotional state. In addition, Marrero alleged that Jenkins had warned him that if he did not take a plea, he would certainly be found guilty and sentenced to 30 years or life in prison, thus securing Marrero's acquiescence with threats. At defense counsel's request, the district court construed Marrero's March 14 letter as a *pro se* motion to withdraw his guilty plea. After asking Marrero a series of questions about the contents of the letter, the court declared Marrero's claims against Jenkins "unsubstantiated and defamatory" and denied the motion, expressing its assurance that Marrero pled guilty freely and voluntarily. The court went on to sentence Marrero to 262 months imprisonment and an 8-year term of supervised release. On the government's motion, the court dismissed the remaining two counts. Marrero filed a timely notice of appeal.[2]

---

[2]In addition to the brief prepared by counsel, we also have before us a document entitled "Supplemental Brief on Additional Merits by the Appellant Through Attorney of Record Wesley A. Dumas Sr.," which appears to have been drafted by Marrero. In the supplemental brief, Marrero attempts to raise an ineffective assistance of counsel claim and accuses the district court of violating the plea hearing procedures set forth in Fed. R. Crim. P. 11. Because this is not one of the "rare cases" where counsel's error is apparent from the existing record, *United States v. Lopez-Medina*, 461 F.3d 724, 737 (6th Cir. 2006), we will adhere to the general rule that ineffective assistance

On appeal, Marrero challenges the district court's refusal to permit the withdrawal of his plea. A district court possesses "broad discretion" in determining whether it is appropriate to allow a defendant to withdraw his guilty plea prior to sentencing. *United States v. Valdez*, 362 F.3d 903, 912 (6th Cir. 2004). We review the district court's denial of Marrero's motion to withdraw for an abuse of discretion. *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007).

Rule 11 of the Federal Rules of Criminal Procedure permits the withdrawal of a plea of guilty where the defendant is successful in establishing a "fair and just reason for requesting withdrawal." Fed. R. Crim. P. 11(d)(2)(B). A defendant seeking to withdraw his plea carries the burden of demonstrating that the circumstances of his case warrant withdrawal. *United States v. Pluta*, 144 F.3d 968, 973 (6th Cir. 1998). Several factors are relevant to the assessment of the validity of a defendant's claim of entitlement to a withdrawal of his guilty plea:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings: (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Dixon*, 479 F.3d at 436. These factors collectively counsel in favor of affirming the ruling of the district court in this case.

A substantial period of time elapsed between the entry of Marrero's plea of guilty and his later petition to withdraw that plea. After pleading guilty on December 6, 2005, Marrero waited 98

---

claims are best suited for resolution in a post-conviction proceeding under 28 U.S.C. § 2255. *Id.* As to Marrero's Rule 11 claim, his allegations regarding the district court's participation in the plea discussions are without factual support and do not merit further consideration.

days, until March 14, 2006, to notify the government and the court that he wished to withdraw his plea. Because of the length of the delay in this case, Marrero must submit a comparatively more persuasive explanation for his failure to file a timely motion for withdrawal of plea. *See United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) ("[A] defendant's reasons for filing [a motion to withdraw] will be more closely scrutinized when he has delayed his motion for a substantial length of time.") (quoting *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir. 1987)). Marrero argues, generally, that he was confused and alarmed by the charges against him and that he lacked the necessary facility with the English language to engage fully in the proceedings. He asserts that those factors justify his failure to make a timely motion for withdrawal of his plea. These claims failed to persuade the district court and are similarly unavailing here. First, nothing in the record demonstrates the existence of anxiety beyond that which might normally attend criminal proceedings. Second, as the government correctly observes, the record contradicts Marrero's claim that he lacked sufficient understanding of the English language to file a motion to withdraw earlier. The Presentence Investigation Report (PSR) states that Marrero has lived in the United States since he moved from Puerto Rico at the age of 11, that is, more than 20 years prior to his sentencing. According to the PSR, while Marrero initially had difficulty in school because of his problems with the English language, he is now fluent in English and Spanish. Marrero did not object to either of these representations in the PSR. In addition, at his plea hearing on December 6, 2005, Marrero assured the district court that he had no difficulty reading or understanding English and participated fully in English.[3]

---

[3]We note further that while a fellow inmate may have assisted Marrero in the production of his "supplemental brief," Marrero's production of a *pro se* brief written entirely in English casts serious doubt on his claim that his limited language skills prevented him from filing a timely motion

Marrero rightly recognizes that "[t]he length of time it took . . . to perfect his Motion to withdraw plea is normally fatal to his effort herein." The Sixth Circuit has repeatedly affirmed the denial of motions to withdraw in cases involving delays of this length and shorter where a defendant failed to provide a satisfactory explanation for any delay. *See, e.g.*, *Valdez*, 362 F.3d at 913 (noting that defendant's "unjustified 75-day delay, alone, supported the court's denial of a motion to withdraw"); *United States v. Durham*, 178 F.3d 796, 798-99 (6th Cir. 1999) (observing that the "strongest factor supporting the district court's denial of [defendant's motion to withdraw his plea]" was 77-day delay in filing motion); *Baez*, 87 F.3d 808 ("The strongest factors supporting the district court's ruling are the sixty-seven day delay between the motion and the plea, and [defendant's] failure to justify this extensive delay."). Because Marrero has similarly failed to offer any viable reason for his delayed attempt to withdraw his plea, this factor weighs heavily in favor of the government's position.

Marrero's failure to maintain a consistent claim of innocence likewise undercuts his request for relief. "Some courts have held that the absence of a defendant's vigorous and repeated protestations of innocence support the denial of a motion to withdraw a guilty plea." *Baez*, 87 F.3d at 809. Although Marrero entered an initial plea of not guilty to the second superseding indictment, he later signed a plea agreement, assenting to the government's account of the factual basis for his guilty plea, that is, that he was involved in a conspiracy to distribute at least 700 grams, but less than one kilogram, of heroin. At his plea hearing before the district court, Marrero never claimed that he was in fact innocent of the charges against him. Instead, he confirmed for the district court that the plea agreement was accurate. Only at his sentencing, when he sought to withdraw his guilty plea,

---

to withdraw his guilty plea.

6

did Marrero seriously contest his guilt, and those claims of innocence were largely detached from the evidence in the case, as the district court pointed out.

As to the circumstances underlying Marrero's plea, he contends that he pled guilty as a result of improper influence from his attorney and without awareness of the consequences of his plea. The district court correctly found no support for Marrero's claim that his defense attorney coerced him into accepting a guilty plea. Indeed, at his December 6 plea hearing, Marrero both expressed satisfaction with his attorneys and expressly denied being the victim of inappropriate persuasion:

> THE COURT: Are you satisfied with your lawyers' representation of you?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Now, sir, has anyone threatened or pressured you in any way, shape or form to get you to come in and change your plea to guilty today?
>
> THE DEFENDANT: No.
>
> THE COURT: Put another way, are you here voluntarily because after discussing this with your attorneys, and maybe some family members, I know you were discussing this matter with a cousin I believe this morning, that you have decided this is the best thing to do under the circumstances?
>
> THE DEFENDANT: Yes, Your Honor.

The remainder of the record is devoid of any support for Marrero's allegations of duress.

Further, Marrero's particular circumstances and background, including his criminal history, did not warrant allowing the withdrawal of his plea. As noted, Marrero is a long time residence of the United States and, by all reliable accounts, is fluent in English. He has identified no extraordinary family circumstances that would be relevant to the issue before the court. In addition, the PSR prepared in Marrero's case detailed a lengthy and ongoing involvement with the criminal justice system, belying Marrero's claim that he was "confused" about the nature of the proceedings

against him. Marrero insisted during the March 17 sentencing hearing that he did not properly understand the significance of his career criminal status and the dramatic impact on his sentence that would result from that designation. To be sure, there is a passable argument that Marrero – whose lengthy criminal history does not include experience with the federal system – was unaware of the substantial penalties assessed against repeat drug offenders under federal law. However, the plea agreement Marrero signed expressly stated that, because of his criminal history, he could be subject to a minimum mandatory term of ten years imprisonment to up to life imprisonment, a $4,000,000 fine, and at least 8 years of supervised release. At the December 6 hearing, the court clearly explained the sentencing implications of his decision to plead guilty. Thus, to the extent that Marrero might argue that his lack of experience with the federal criminal system prevented him from understanding the proceedings, the government and the district court adequately informed him of the potential consequences of his decision to plead guilty.

Finally, the issue of prejudice to the government is largely irrelevant to this case. The government has not argued that the withdrawal of Marrero's guilty plea would have caused it prejudice of any kind. Had the district court permitted Marrero to withdraw his plea, the government would have been obliged, of course, to expend the resources necessary to try Marrero's case to a final resolution. This is a standard cost of prosecuting criminal actions and of no special significance here, as "[t]he government always has to spend time and money trying a case." *Valdez*, 362 F.3d at 913. Because the remaining factors overwhelmingly support the district court's decision to deny Marrero's motion to withdraw his plea, the inapplicability of this factor has no impact on the resolution of the case.

III.

For the foregoing reasons, we affirm the judgment of the district court.