**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0121n.06

No. 13-1183

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 12, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| SOLOMON JULIUS CARPENTER, | ) | |
| | ) | **O P I N I O N** |
| **Defendant-Appellant.** | ) | |
| _____ | ) | |

**Before: MOORE and GRIFFIN, Circuit Judges, and KORMAN, District Judge.**[*]

**KAREN NELSON MOORE, Circuit Judge.** Solomon Julius Carpenter ("Carpenter")

appeals from the district court's order denying his motion to withdraw his guilty plea. He argues

that he is actually innocent of the charges and that he entered a guilty plea only because his counsel

tricked, misled, or coerced him. For the reasons that follow, we **AFFIRM** the district court's order

denying Carpenter's motion to set aside his guilty plea.

**I. BACKGROUND**

On May 25, 2010, law enforcement officers removed more than 38 grams of cocaine base

and over 200 grams of marijuana from Carpenter's residence. R. 30 (Plea Agreement at 2) (Page

ID #97). Carpenter later admitted to officers that he sold an ounce of cocaine base each week, on

average. Presentence Report ("PSR") ¶ 21. On August 18, 2010, a federal grand jury indicted

_____

[*]The Honorable Edward Korman, Senior United States District Judge for the Eastern District
of New York, sitting by designation.

Carpenter on one count of knowing possession of five grams or more of cocaine base with intent to distribute, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(B)(iii), and one count of knowing possession of less than fifty kilograms of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D).  R. 1 (Indictment) (Page ID #1–2).

On October 15, 2010, Carpenter attempted to enter a plea of guilty "under duress."  R. 32 (Initial Plea Hr'g Tr. at 2) (Page ID #113).  Upon further review, the district court determined that Carpenter's claim of duress arose from the terms of the plea agreement, in which the government agreed to dismiss the second count and refrain from seeking a sentencing enhancement under 21 U.S.C. § 851 in exchange for Carpenter's guilty plea to the first count.  R. 30 (Plea Agreement) (Page ID # 96–102).[1]  Carpenter felt pressured to plead guilty because the government intended to file a supplemental information increasing the mandatory minimum penalty if the case were to proceed to trial.  R. 32 (Initial Plea Hr'g Tr. at 4, 7–8) (Page ID #115, 118–19).  Nonetheless, Carpenter indicated his desire to plead guilty, and he acknowledged to the district court that he had made his decision freely and voluntarily and that nobody had threatened or coerced him to plead guilty. *Id.* at 14 (Page ID #125).  When the court asked for his allocution of the factual basis for his plea, however, Carpenter denied that the cocaine base was in his possession and denied that he had

---

[1]The Plea Agreement entered into the record is the one signed before Carpenter's second hearing.  The two plea agreements that Carpenter signed are identical in all material respects, except that in the second agreement the government agrees to dismiss the supplemental information it filed after Carpenter's first attempt to plead guilty failed.  R. 30 (Plea Agreement at 3) (Page ID #98).

2

intended to distribute it. *Id.* at 16–19 (Page ID #127–30). On that basis, the district court refused to accept his guilty plea. *Id.* at 19 (Page ID #130).

After the district court refused to accept Carpenter's guilty plea, the government filed a supplemental information establishing Carpenter's prior drug conviction, which enhanced his mandatory minimum sentence from five to ten years of imprisonment. R. 24 (Info. and Notice of Prior Drug Conviction) (Page ID #89–90). Carpenter then arranged for a second plea hearing for October 21, 2010. R. 25 (Notice) (Page ID #91). During this second hearing, Carpenter again informed the district court that nobody had threatened or coerced him into entering a guilty plea and that he was satisfied with his counsel's representation. R. 33 (Final Plea Hr'g Tr. at 4–5) (Page ID #147–48). Carpenter then entered his guilty plea, admitting that he possessed thirty-eight grams of crack cocaine with intent to deliver. He also explained where he had obtained the drugs, and that he knew it was crack cocaine "[b]ecause the drugs smelled like drugs." *Id.* at 8–9 (Page ID #151–52). Ultimately, he explained that he wished to plead guilty "[b]ecause [he] just would like to accept [his] responsibility." *Id.* at 10 (Page ID #153). The district court accepted Carpenter's guilty plea and scheduled him for sentencing, but allowed him to remain placed in a halfway house. *Id.* at 10–11, 15 (Page ID #153–54, 158).

Carpenter subsequently moved to modify the conditions of his bond, and attached a letter to the court in support. R. 34 (Mot. to Modify) (Page ID #160). In this letter, Carpenter wrote that he had "accepted the responsibility of [his] actions, the consequence[s] of [his] decisions" and that he anticipated that after his sentencing he would have "a chance to reform, rehabilitate and restructure"

his future. R. 34-1 (Carpenter Ltr. at 3) (Page ID #164). The court denied the motion for modification. R. 37 (Mem. Op. and Order) (Page ID #170–72).

While preparing Carpenter's PSR, a probation officer met with Carpenter to gather information. The probation officer indicated that he would recommend that the court decline to credit Carpenter for acceptance of responsibility when calculating his guidelines range. The PSR was electronically filed with the court on December 6, 2010. R. 80 (Sentencing Hr'g Tr. at 8) (Page ID #343).

On December 8, Carpenter's trial counsel moved to withdraw, citing "irreconcilable differences" with his client. R. 38 (Mot. to Withdraw) (Page ID #173–74). Specifically, Carpenter's counsel asserted that he would be unable to continue representing Carpenter because Carpenter "made several accusations against Counsel including, but not limited to, unprofessional and illegal conduct, misleading and/or tricking Defendant into signing the plea agreement, [and] misleading and/or tricking Defendant into entering his guilty plea in court." *Id.* The district court denied counsel's motion to withdraw, but appointed standby counsel to confer with Carpenter and his attorney. R. 40 (Order) (Page ID #176); R. 80 (Sentencing Hr'g Tr. at 5–6) (Page ID #340–41). After a positive drug test, Carpenter absconded from his halfway house and failed to appear for his scheduled sentencing hearing.

On March 28, 2011, with assistance of new counsel, Carpenter filed a motion to withdraw his guilty plea. R. 67 (Mot. to Withdraw Plea) (Page ID #232). In the accompanying affidavit, he alleged that "his plea was induced by his counselor who persistently coersed [sic] his client into

surrendering his claims of innocence." R. 72 (Affidavit) (Page ID #281–82). At a hearing on April 4, 2011, the district court noted for the record that "the taking of a guilty plea is one of the most serious and one of the most carefully undertaken proceedings that a United States district judge does in his or her description of responsibilities, and this case was no exception whatever to that." R. 80 (Sentencing Hr'g Tr. at 33) (Page ID #368). The district court explained that it found the plea agreement to be "full and fair and accurate" and that it had confidence, based on personal experience, that Carpenter's trial counsel was competent. *Id.* at 29–30 (Page ID #364–65). It also found that Carpenter's assertion of innocence was unconvincing because he had knowingly entered a guilty plea and offered additional facts beyond the questions posed directly to him by the court. *Id.* at 32 (Page ID #367). The district court denied Carpenter's motion to withdraw his guilty plea and sentenced him to 96 months of imprisonment. R. 74 (Order) (Page ID #286); R. 80 (Sentencing Hr'g Tr. at 49) (Page ID #384).

Carpenter filed an untimely notice of appeal on September 9, 2011, which we dismissed on January 17, 2012. R. 85 (Order) (Page ID #452). On February 1, 2013, the district court allowed Carpenter to pursue a delayed appeal pursuant to his 28 U.S.C. § 2255 motion. This timely appeal followed.

## II. ANALYSIS

Carpenter argues that the district court erred in denying his motion to withdraw his guilty plea. "We review for abuse of discretion the district court's denial of a motion to withdraw a guilty plea." *United States v. Catchings*, 708 F.3d 710, 717 (6th Cir. 2013); *United States v. Triplett*, 828

F.2d 1195, 1197 (6th Cir. 1987) (affording district courts "a broad range of discretion" when deciding whether to grant a motion to withdraw a guilty plea). If a defendant seeks to withdraw his guilty plea after the court has accepted the plea but before sentencing, he must "show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The defendant has the burden of demonstrating a ground for granting the motion to withdraw. *Triplett*, 828 F.2d at 1197.

We consider a number of factors to determine whether a defendant has provided a fair and just reason for withdrawing his plea:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007) (quoting *United States v. Pluta*, 144 F.3d 968, 973 (6th Cir. 1998)). However, the court need not consider prejudice to the government if, considering the other six factors, the defendant cannot establish grounds for withdrawing his plea. *Catchings*, 708 F.3d at 719.

The first two factors are closely intertwined: "The shorter the delay, the more likely a motion to withdraw will be granted, and a defendant's reasons for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time." *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (quoting *Triplett*, 828 F.2d at 1197). A protracted interval between a plea and a motion to withdraw is particularly relevant to the court's analysis because

"[t]he purpose of Rule 11(d) is to allow a 'hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.'" *Dixon*, 479 F.3d at 436 (quoting *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991)). When a defendant delays moving to withdraw his guilty plea for a significant period, without justification, it suggests that he is behaving strategically.

We have not fashioned a precise cut-off point beyond which delay is unreasonable, but we have affirmed decisions denying the withdrawal of a guilty plea after delays as short as one or two months. *See United States v. Valdez*, 362 F.3d 903, 913 (6th Cir. 2004) (75 days); *United States v. Durham*, 178 F.3d 796, 799 (6th Cir. 1999) (77 days); *Baez*, 87 F.3d at 808 (67 days); *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987) (35 days). That Carpenter waited 155 days after entering his guilty plea before he filed his motion to withdraw thus weighs against him.

The government argues that Carpenter's delay is excessive because he knew the basis for his motion to withdraw his plea—that his attorney had misled or coerced his guilty plea—at the time of his plea hearing. We have held under other circumstances that even a relatively short delay is damaging to a defendant when he knew at the time of his plea hearing the grounds upon which he could seek to withdraw his plea. *See Triplett*, 828 F.2d at 1197; *Spencer*, 836 F.2d at 239 ("[W]here a defendant is aware of the condition or reason for a plea withdrawal, at the time the guilty plea is entered, a case for withdrawal is weaker."). Here, because Carpenter alleges that his attorney encouraged him before the hearing to make up a story to appease the court, *see* R. 80 (Sentencing

Hr'g Tr. at 38) (Page ID #373), it is evident that he knew at the hearing the grounds upon which he seeks to withdraw his plea. Furthermore, Carpenter agreed under oath that nobody, including his attorney, had coerced him into entering a guilty plea. R. 33 (Final Plea Hr'g Tr. at 4–5) (Page ID #147–48). But these statements do not necessarily end the inquiry because, under some circumstances, it might be unreasonable for this court to expect a defendant to accuse his attorney of coercion when the attorney stands by his side to represent him; certain abusive or coercive behavior might excuse an otherwise lengthy delay because, by its nature, the coercion both forces a defendant into pleading guilty and prevents the defendant from attempting to withdraw his plea.

We need not decide whether Carpenter's case presents such circumstances, however, because the timing of his motion to withdraw his guilty plea remains suspect. First, even if we were to "credit" Carpenter with the delay while he was still represented by the counsel who allegedly coerced him into his guilty plea, Carpenter still waited for approximately three months after he obtained standby counsel to file his motion. *See Pluta*, 144 F.3d at 974 (finding a defendant's delay in moving to withdraw his guilty plea excessive even after "refin[ing] the time line" to account for his ignorance of his right to defer admitting to any conduct until after receiving a copy of the Sentencing Guidelines). He could have informed standby counsel that he wished to withdraw his guilty plea at any time after counsel was appointed on December 20, 2010. R. 40 (Order) (Page ID #176). Furthermore, Carpenter's argument that he could not seek to withdraw his plea until he obtained new counsel and gave them time to familiarize themselves with his case is unconvincing: if Carpenter really wished to withdraw his guilty plea, he could have expressed his intention to the

court prior to retaining new counsel. *See Catchings*, 708 F.3d at 718 ("[W]e are not convinced that [the defendant] was unable to express his intention to withdraw his guilty plea prior to being permitted to proceed pro se."). And even after Carpenter retained new counsel who indicated in early March that they intended to file a motion to withdraw his guilty plea, R. 62 (Status Conf. Tr. at 3–4) (Page ID #218–19), Carpenter's counsel made a tactical decision to delay his motion by an additional two weeks in favor of pursuing discovery. R. 67 (Mot. to Withdraw Plea) (Page ID #232–33).

Second, the sequence of events leading to Carpenter's allegations that his attorney coerced his guilty plea is suspect. Carpenter first raised these complaints in early December, mere days after Carpenter's probation officer recommended that he not receive an adjustment to his sentencing guidelines for acceptance of responsibility. This timing suggests that Carpenter was disappointed with the recommended sentencing range and chose as a strategic matter to attempt to withdraw his guilty plea and take his chances at trial. We have long cautioned that the withdrawal of a guilty plea is not a strategic tool. *See Alexander*, 948 F.2d at 1004. The totality of the circumstances pertaining to the timing of Carpenter's motion suggest that he has used the motion in an attempt to gain leverage after he was disappointed by his recommended sentence, not to correct a hasty decision to plead guilty.

Carpenter's claims of innocence do not weigh in his favor either. A defendant's "vigorous and repeated protestations of innocence" may support the decision to allow withdrawal of a guilty plea. *Baez*, 87 F.3d at 809. However, claims of innocence are not convincing when the defendant

has vacillated over time. *See Dixon*, 479 F.3d at 437; *United States v. Marrero*, 237 F. App'x 71, 74 (6th Cir. 2007). Although Carpenter claims that he has always maintained his innocence, R. 72 (Affidavit) (Page ID #281), the record demonstrates otherwise. Carpenter signed two written plea agreements acknowledging his guilt. In addition, although he balked at admitting to possessing drugs at his first plea hearing, he did admit his guilt at the second hearing and provided details of his conduct beyond the information specifically elicited by the court. He also admitted his guilt in a letter he wrote to the court accepting responsibility and anticipating "a chance to reform, rehabilitate, and restructure" his life. R. 24 (Mot. to Modify) (ID #160–65). Carpenter has not claimed that this statement was coerced by his attorney. Furthermore, Carpenter's claim that he repeatedly protested his innocence to his attorney is not supported by any proof, in the form of the letters he allegedly wrote to his attorney or testimony from his trial attorney. Finally, Carpenter did not object to the factual findings contained in the PSR, which establish his guilt. PSR ¶¶ 11–27. Carpenter's intermittent claims of innocence fall far short of the "vigorous and repeated protestations" desired by the court to weigh in favor of granting a motion.

The circumstances underlying the entry of Carpenter's guilty plea also suggest that he should not be permitted to withdraw his plea. Carpenter claims that he was confused by the changes his attorney made to the draft of the plea agreement. R. 80 (Sentencing Hr'g Tr. at 37) (Page ID #372). Carpenter also asserts that he understood that he would be given credit for acceptance of responsibility. *Id.* at 9 (Page ID #344). However, the plea agreement clearly states that it is not binding on the court and that "disagreement with the Guideline range or sentence shall not constitute

a basis for withdrawal of the plea." R. 30 (Plea Agreement at 4) (Page ID #99). And Carpenter demonstrated that he was fairly sophisticated in his knowledge of federal sentencing because he had researched Congressional debate regarding the sentencing guidelines. R. 32 (Initial Plea Hr'g Tr. at 8) (Page ID #119). Thus, his claim that he did not understand that the sentence he expected was a minimum is not credible, and his claimed belief that he was promised a certain sentence or credit does not support his claim. *See United States v. Gunter*, 620 F.3d 642, 647 (6th Cir. 2010) (finding a guilty plea knowing and voluntary when the defendant's purported belief that his maximum sentence was 60 months was contradicted by the record that explicitly stated that 60 months was merely an estimate). The circumstances surrounding Carpenter's guilty plea demonstrate that he understood both the consequences of pleading guilty and the risk of a higher sentence at trial, and he made the calculated decision to accept the plea agreement.

Carpenter's personal characteristics indicate that he made an informed choice to enter a guilty plea and also weigh against granting his motion. Carpenter earned his high school degree and completed several courses at a community college. PSR ¶ 95. He has not raised any issue regarding his mental or physical competency on appeal, and indeed his knowledge of the sentencing guidelines indicates that he had the capacity to understand the legal consequences of his decision. *See* R. 32 (Initial Plea Hr'g Tr. at 8) (Page ID #119). Thus, Carpenter's background supports the conclusion that he had the education and intelligence necessary to understand the consequences of his plea.

Finally, Carpenter's fairly extensive experience with the criminal justice system weighs against him. Carpenter's probation officer assigned him a criminal history category of III, which

11

reflected a number of prior convictions, including at least five drug possession convictions. PSR ¶¶ 48, 53, 59, 60, 66. Several of these convictions resulted in guilty pleas. *Id.* Carpenter's extensive criminal history "clearly indicates that [he] was not a naive stranger to the criminal proceedings in which he was involved." *Pluta*, 144 F.3d at 974; *see also Catchings*, 708 F.3d at 719 (finding that the defendant's criminal history category of III weighed against him). We need not consider whether the government would be prejudiced by the withdrawal of Carpenter's guilty plea because Carpenter has failed to demonstrate a fair and just reason to allow withdrawal. *See Catchings*, 708 F.3d at 719; *Spencer*, 836 F.2d at 240.

Although the district court did not explicitly cite the *Dixon* factors, the record clearly shows that the factors influenced the court's decision to deny Carpenter's motion to withdraw his guilty plea. *See Baez*, 87 F.3d at 808. During the sentencing hearing, the district court found that Carpenter's claims that his attorney had coerced him into pleading guilty were not credible and it reasoned that none of the circumstances surrounding the entering of Carpenter's plea or his personal history indicated that he did not understand the consequences of his guilty plea. After considering the totality of the circumstances, we hold that the district court did not abuse its discretion in denying Carpenter's motion.

Although we find no abuse of discretion, we must also consider whether Carpenter should be permitted to withdraw his guilty plea because, under current law, the district court misinformed him of the applicable statutory maximum and minimum penalties before accepting his plea. In *United States v. Hogg*, 723 F.3d 730 (6th Cir. 2013), we recently allowed a defendant to withdraw

his guilty plea in a factually analogous situation. Although the district court advised Hogg of the correct statutory range under the then-current law, the Supreme Court's supervening decision in *Dorsey v. United States*, 132 S. Ct. 2321 (2012), overruled the law of this Circuit. *Hogg*, 723 F.3d at 739. *Dorsey* held that the Fair Sentencing Act's "more lenient penalty provisions apply to offenders who committed a crack cocaine crime before August 3, 2010, but were not sentenced until after August 3." 132 S. Ct. at 2326. The *Hogg* court held that, because Hogg was not sentenced until after the FSA effective date, the district court should have computed his statutory penalty range using the amended statutory provisions; that is, Hogg should have been advised that he was subject to zero to twenty years of imprisonment for his guilty plea involving "five grams or more" of cocaine base instead of five to forty years. 723 F.3d at 740.

The *Hogg* court, assessing the Rule 11 claim under harmless-error review, rejected the government's argument that any violation was harmless because Hogg had admitted in his plea agreement to being responsible for between fifty and 150 grams of cocaine base: "Although this argument has some superficial appeal, we find that it unduly discounts the important role of Rule 11 in ensuring that a defendant is fully informed of the consequences of his guilty plea." *Id.* at 741. Consequently, the *Hogg* court concluded that Hogg should be permitted to withdraw his guilty plea because the district court erred by failing to advise him of the appropriate penalty range at his plea hearing.

Similarly, Carpenter committed the charged conduct before August 3, 2010, and he was incorrectly advised at sentencing that he faced a statutory penalty range between five and forty years

of imprisonment. R. 32 (Initial Plea Hr'g at 13) (Page ID #124). However, Carpenter failed to raise this issue before the district court. Instead, he brought this issue to our attention through a Rule 28(j) letter after the briefs for this appeal had been filed. We asked for supplemental briefing from the parties.

Because Carpenter neglected to raise this issue before the district court, he has forfeited the argument. We may nonetheless review the district court's decision for plain error. Carpenter may show plain error by proving four elements: (1) the district court committed error, (2) the error was plain, (3) the error affected his substantial rights, and (4) "the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Henderson v. United States*, 133 S. Ct. 1121, 1126–27 (2013) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)); *United States v. McCloud*, 730 F.3d 600, 603–04 (6th Cir. 2013). The government concedes that Rule 11 error occurred here and that it is plain under the law that exists at the time of this appeal. Appellee Ltr. Br. at 2–3 n.1. We need not decide whether the district court's plain error affected Carpenter's substantial rights because the district court's then-correct but current misstatement of the appropriate statutory sentencing range does not seriously undermine the fairness or integrity of the judicial process. *United States v. Cotton*, 535 U.S. 625, 632–33 (2002).

Carpenter is serving a sentence appropriate for conduct that he has admitted: although Carpenter pleaded guilty to possession of five or more grams of cocaine base, he admitted in his plea agreement that he in fact possessed thirty-eight grams. The correct statutory sentencing range for possession of thirty-eight grams of cocaine base is the same as the range described to Carpenter

during his sentencing hearings. Furthermore, Carpenter cannot demonstrate that he would not have pleaded guilty had he been advised that his conduct subjected him to a lower statutory range. Carpenter expressly informed the court that he was "only entering into the plea agreement . . . to avoid being supplemented by the government." R. 32 (Initial Plea Hr'g at 2–3) (Page ID #113–14); *see also id.* at 8 (Page ID #119) ("But considering that I would be facing a ten-year sentence for this one offense that I'm in court for, I cannot see myself taking that risk."). Carpenter's situation has not appreciably changed merely because the statutory range applicable to his underlying offense changed; regardless of the correct base statutory sentencing range, he remains subject to a ten-year mandatory minimum should the government choose to file a supplemental information. Accordingly, we choose not to exercise our discretion to correct the district court's error under current law.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's denial of Carpenter's motion to withdraw his guilty plea.